ALMON, Justice.
Sylvester Eugene Keller filed suit as administrator of the estate of Rose Etta Keller against American Medical International, Inc. (“AMI”); Lister Hill Hospitals, Inc.; Tucker Grau; Bourns Life Systems; and Bear Medical Systems for the wrongful death of Rose Keller. The trial court granted summary judgment for Bourns and Bear. The claims against AMI, Hill Hospitals, and Grau were tried before a judge and jury. The jury returned a verdict in favor of AMI, Hill Hospitals, and Grau. The trial court entered judgment upon the jury’s verdict.
Keller filed a motion for new trial, claiming, among other things, that the trial court improperly commented on the evidence during the trial. Keller also argued that the trial court erred in not granting his motion for a mistrial made at the time of the allegedly improper comments. The trial court denied Keller’s motion. Keller now appeals to this Court, arguing that the trial court erred in denying his motion for new trial.
On February 16, 1984, Rose Keller was admitted to the Northwest Alabama Medical Center suffering from serious respiratory problems. She was placed on a ventilator to assist her breathing. About 7:30 a.m. the ventilator began sounding an intermittent alarm, signaling that she was not being properly ventilated by the machine. She was disconnected from the machine and an “Ambu bag,” a manual ventilating device, was used in an attempt to ventilate her. Rose Keller died at about 8:25 a.m.
Keller alleged as part of his negligence and wantonness claims that the lack of a backup ventilator was the proximate cause of Rose Keller’s death. At trial, Keller produced the testimony of several members of Northwest Alabama’s medical staff who said that they felt that a backup ventilator *245 was necessary for the hospital. Grau, who was the administrator at Northwest Alabama at the time of Rose Keller’s death, testified that one ventilator was all that was needed by the hospital. Other medical experts testified that an Ambu bag actually works better under these circumstances than a ventilating machine.
On cross-examination, Keller’s attorney attempted to introduce evidence of the Joint Commission on Accreditation for Hospitals (“JCAH”) guideline that “[rjespirato-ry care services that meet the needs of the patients as determined by the medical staff shall be available at all times.” The following occured:
“Q This accreditation, as of March 1983, your hospital became bound to comply with the standards and policies on respiratory therapy, if you offer respiratory therapy, from the joint commission, didn’t you?
“MR. CLEMENTS: We object to that, Your Honor. That’s not the correct standard.
“THE COURT: All right. I sustain.
“Q (BY MR. HENINGER): Well, your lawyer says you got accredited in March 1983. But isn’t it a fact that you were accredited on a false assumption—
“MR. CLEMENTS: Now, we—
“MR. HENINGER: I’m not finished with my question, please, sir.
“MR. CLEMENTS: I apologize, Steve.
“Q (BY MR. HENINGER): —in that the assumption, principle of the JCAH is that the respiratory therapy department shall have sufficient equipment according to the medical staff, and there, was nothing, was there, given to the joint commission to indicate to them that your chief of staff objected to your not having a backup ventilator, was there?
“MR. CLEMENTS: I object to the form of the question.
“THE COURT: I’m going to jump in here where angels fear to tread. I think we’re getting far — I’ve let y’all go far afield and be repetitive, and I’m not getting on you about that.
“But the medical staff of a hospital, I will charge the jury, can’t set the standards for the entire world. I think the medical staff they’re talking about is the medical staff that comes around to hospitals, not the one on board, if that’s — I’m trying to give y’all a ruling, okay?
“MR. CLEMENTS: Well, I also object on the ground that that’s not what it says anyway.
“THE COURT: I understand.
“MR. HENINGER: Judge, if I go any further in this area — I think you don’t want me to go any further.
“THE COURT: Well, y’all go as long as you want to. What I’m trying to say is this: I’m trying to assist you and me in making a ruling, when y’all asked the gentleman a question. If the folks that come around and check a hospital to see if it’s accredited, if they say that one bed is enough, and a doctor in the hospital says we need two beds, I don’t think the doctor in the hospital can override the accreditation standards. Now, that’s all I’m saying.”
Keller moved for a mistrial arguing that the trial court’s statements were an improper comment on the evidence. The trial court denied the motion.
Keller asserts that the “medical staff” mentioned in the regulations referred to the medical staffs of each individual hospital instead of a staff from JCAH. Keller contends that the trial court’s statement to the contrary was an improper comment on the evidence.
It has been held, as Keller contends, that a trial judge may not express an opinion on the weight and effect of the evidence in a jury trial. See, Russellville Flower Craft v. Searcy, 452 So.2d 478 (Ala.1984); Madison v. Weldon, 446 So.2d 21 (Ala.1984). Not all statements by the trial court fall into this category, however. When, as here, the statements by the trial court are made to counsel and are made in ruling on an objection or in explaining a ruling on an objection, the statements will not be considered improper comments on the evidence except in extreme cases. See Madison, supra.
After making the statements, the trial court instructed the jury as follows:
*246 “THE COURT: Ladies and gentlemen of the jury, I’ve gone far from being quiet here. I’ve been asked to speak to the attorneys in your absence and let them make their statements to you. In short, it’s been indicated by counsel that they feel my rulings have maybe been taken by you as a comment on the evidence. “I want to dispel in your minds if there be a mental impression that any ruling that I have made in sustaining or overruling the objection to a question is a comment on the evidence. I told you at the outset I didn’t know any more about this case when we got started than you do.
“You are not taking any of my rulings as evidence in the case, are you? You’re going negative like this (demonstrating). Please do not, because I am not commenting on the evidence.
“I tried to use an illustration from time to time to suggest to counsel or use an illustration — instead of us taking a break and saying I think this is good, admissible testimony and that’s not to avoid some gray areas, if you will, and any illustration I’ve given you, please do not take that as a comment on the evidence. “Will you do that? Right? All right. Here we go.”
Additionally, the trial court, during the oral charge to the jury, reiterated that any remarks made by him were not to be considered as comments on the evidence. The trial court perhaps misunderstood the thrust of counsel’s questions; however, when the entire record and the curative instructions are considered, we do not think that the exchange between the court and counsel should be construed to have caused reversible error.
The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.